## IN THE CIRCUIT COURT FOR THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

RECEIVED AND FILED
CIRCUIT COURT OF
ST LOUIS

10 SEP -3 P2:56

**JASON MENSINGER,**
*on behalf of himself and all other employees*
*similarly situated,*

                                    *Plaintiffs,*

    v.

**DICK'S    SPORTING    GOODS,    INC.,**
**GALYAN'S TRADING COMPANY, INC.,**
**EDWARD   STACK,   KATHRYN   SUTTER,**
**WILLIAM COLOMBO, JAY CROSSON, AND**
**LYNN URAM,**

                                    *Defendants.*

No.

**Jury Trial Demanded**



**Serve defendants at:**

**Dick's Sporting Goods, Inc.**
**c/o CSC-Lawyers, Inc. Service Co., Registered Agent**
**221 Bolivar Street**
**Jefferson City, MO 65101**

**Galyan's Trading Company, Inc.**
**c/o CSC-Lawyers, Inc. Service Co., Registered Agent**
**221 Bolivar Street**
**Jefferson City, MO 65101**

**Edward Stack**
**200 Industry Drive**
**Pittsburgh, PA 15725**

**Kathryn Sutter**
**200 Industry Drive**
**Pittsburgh, PA 15725**

**William Colombo**
**200 Industry Drive**
**Pittsburgh, PA 15725**

**Jay Crosson**
**200 Industry Drive**
**Pittsburgh, PA 15725**

**Exhibit**

**A**

Lynn Uram
200 Industry Drive
Pittsburgh, PA 15725

## CLASS ACTION PETITION

### NATURE OF CLAIM

1.     This is a proceeding for injunctive and declaratory relief and monetary damages to redress the deprivation of rights secured to Plaintiff Jason Mensinger individually, as well as all other employees similarly situated, under the common law and various laws of Missouri including, but not limited to, Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505 that require an employer to pay employees for all hours worked, including premium pay when applicable.

### JURISDICTION AND VENUE

2.     Venue is proper in St. Louis County under Mo. Rev. Stat. § 508.010(4). Dick's Sporting Goods, Inc. is a licensed Pennsylvania corporation, and committed wrongful and tortious acts against the Plaintiff in St. Louis County where Dick's Sporting Goods conducted business.

3.     Dick's Sporting Goods operates at least 8 stores within the State of Missouri, including locations in St. Louis County.

### PARTIES

#### A. Plaintiffs

##### *Named Plaintiff*

4.     Plaintiff Jason Mensinger is an adult resident of the State of Missouri. At all relevant times, Named Plaintiff Mensinger worked(s) in St. Louis County.

##### *Class Members*

2

5.     The class members are current and former hourly employees of Defendants, who were paid on an hourly basis at Defendants' locations in Missouri, who were suffered or permitted to work by Defendants and not paid for all the time they worked, including applicable premium pay, pursuant to the statutory and common laws of Missouri.

6.     The class (hereinafter referred to as those individuals "Similarly Situated" or "Class Members") is defined as those employees who fall within one of the following classes:

**CLASS I:**     All current and former hourly paid employees of Defendants who were subjected to Defendants' policy of not ensuring all promised breaks were taken and that employees were completely relieved of all duties during that time;

**CLASS II:**    All current and former hourly paid employees of Defendants whose compensable time was subject to deductions or adjustments, both manually and automatically, to reflect that less time was worked when Defendants suffered or permitted such work to be performed, including during meal breaks and before/after scheduled shifts;

**CLASS III:**   All current and former hourly paid employees of Defendants who were suffered or permitted to perform work while off the clock without compensation;

**CLASS IV:**    All current and former hourly paid employees of Defendants who were suffered or permitted to work more than 40 hours in one week, thus entitled to be compensated at a rate of one and one-half times their regular rates of pay for the time they worked in excess of 40 hours per week, but were subject to Defendants policy to not compensate Plaintiffs and Class Members at the premium rate of pay for hours over 40 per week.

## B. Defendants

7.     Defendants Dick's Sporting Goods, Inc., and Galyan's Trading Company, Inc. are joint employers.

3

8.    Defendant Dick's Sporting Goods, Inc. bought and completely assumed all aspects of Defendant Galyan's Trading Company, Inc. in 2004.

9.    Defendant Dick's Sporting Goods, Inc. is a Pennsylvania corporation with its main office at 300 Industry Drive, Pittsburgh, PA 15275.

10.   Defendant Dick's Sporting Goods, Inc. does substantial business in Missouri with at least 8 locations across the State.

11.   Edward Stack is the President and CEO of Dick's Sporting Goods, Inc.

12.   Upon information and belief, Mr. Stack's responsibilities include actively managing Dick's Sporting Goods, Inc.

13.   Upon information and belief, Mr. Stack has the authority to, and does, make decisions that concern the policies Defendants adopt and the implementation of those policies.

14.   Upon information and belief, Mr. Stack has the authority to, and does, make decisions that concern Defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

15.   Upon information and belief, due in part to his role as President and CEO, Mr. Stack is actively involved in the creation of the illegal policies complained of in this case.

16.   Upon information and belief, due in part to his role as President and CEO, Mr. Stack actively advises Defendants' agents on the enforcement of the illegal policies complained of in this case.

17.   Upon information and belief, due in part to his role as President and CEO, Mr. Stack actively ensures Defendants' compliance or non-compliance with Missouri

4

state law including, but not limited to, the requirements of Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505.

18.     Upon information and belief, Mr. Stack has the authority to, and does, make decisions that concern the reviewing and counseling of Defendants regarding employment decisions, including hiring and firing of Plaintiffs and Class Members.

19.     Upon information and belief, Mr. Stack has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

20.     Upon information and belief, Mr. Stack has the authority to, and does, make decisions that concern standard pay scales.

21.     Upon information and belief, Mr. Stack has the authority to, and does, make decisions that concern Defendants' human resources policies, the resolution of issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

22.     Upon information and belief, Mr. Stack has the authority to, and does, make decisions that concern Defendants' employment and human resources records, including the systems for keeping and maintaining those records.

23.     Upon information and belief, Mr. Stack has the authority to, and does, make decisions that concern Defendants' payroll functions.

24.     Upon information and belief, Mr. Stack has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their

5

payroll checks.

25.     Because Mr. Stack has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs and Class Members, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Stack has the power to hire and fire employees.

26.     Because Mr. Stack has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Stack supervises and controls employees' work schedules and/or conditions of employment.

27.     Because Mr. Stack has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Stack determines the rate and method of employees' payment.

28.     Because Mr. Stack has authority with respect to Defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Stack maintains employees' employment records.

29.     Because Mr. Stack provides day-to-day support regarding human

6

resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of the Defendants' business functions, particularly in regards to the employment of Plaintiffs.

30.     Because Mr. Stack is actively involved in the creation of the illegal policies complained of in this case, actively advises Defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures Defendants' compliance or non-compliance with Missouri state law, including, but not limited to, the requirements of Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505, he actively participates in the violations complained of in this action.

31.     Based upon the foregoing, Mr. Stack is liable to Plaintiffs because of his active role in operating the business, his status as an employer, or according to state common law.

32.     Kathryn Sutter is the Senior Vice President of Human Resources of Dick's Sporting Goods, Inc.

33.     Upon information and belief, Ms. Sutter is responsible for, provides direction and control over, and is authorized to direct all aspects of human resources functions across Dick's Sporting Goods, Inc.

34.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, Ms. Sutter is actively involved in the creation of the illegal policies complained of in this case.

35.     Upon information and belief, due in part to her role of overseeing human

7

resources, training and education, and payroll and commission services, Ms. Sutter actively advises Defendants' agents on the enforcement of the illegal policies complained of in this case.

36.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, Ms. Sutter actively ensures Defendants' compliance or non-compliance with Missouri state law including, but not limited to, the requirements of Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505.

37.     Upon information and belief, Ms. Sutter, is actively involved in reviewing and counseling Defendants regarding employment decisions, including hiring and firing of Plaintiffs and Class Members.

38.     Upon information and belief, Ms. Sutter, is actively involved in decisions that set employees' schedules, hours and standard benefit levels.

39.     Upon information and belief, Ms. Sutter, is actively involved in decisions that set standard pay scales.

40.     Upon information and belief, Ms. Sutter, is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

41.     Upon information and belief, Ms. Sutter, is actively involved in Defendants' employment and human resources records, including the systems for keeping and maintaining those records.

8

42. Upon information and belief, Ms. Sutter, is actively involved in Defendants' payroll functions.

43. Upon information and belief, Ms. Sutter, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

44. Upon information and belief, Ms. Sutter, is actively involved in Defendants' benefit plans.

45. Upon information and belief, Ms. Sutter, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

46. Because Ms. Sutter has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Sutter has the power to hire and fire employees.

47. Because Ms. Sutter has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Sutter supervises and controls employees' work

9

schedules and/or conditions of employment.

48.    Because Ms. Sutter has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Sutter determines the rate and method of employees' payment.

49.    Because Ms. Sutter has authority with respect to Defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Sutter maintains employees' employment records.

50.    Because Ms. Sutter provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of Defendants' business functions, particularly in regards to the employment of Plaintiffs and Class Members.

51.    Because Ms. Sutter is actively involved in the creation of the illegal policies complained of in this case, actively advises Defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures Defendants' compliance or non-compliance with the requirements of Missouri state law including, but not limited to, the requirements of Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505, Ms. Sutter actively participates in the violations complained of in this action.

52. Based upon the foregoing, Ms. Sutter is liable to Plaintiffs because of her active role in operating the business, her role in the violations complained of in this action, her status as an employer, or otherwise according to state law.

53. William Colombo was the President and Chief Operating Officer ("COO") of Dick's Sporting Goods, Inc.

54. Upon information and belief, Mr. Colombo's responsibilities include actively managing Dick's Sporting Goods, Inc.

55. Upon information and belief, Mr. Colombo had the authority to, and did, make decisions that concern the policies Defendants adopt and the implementation of those policies.

56. Upon information and belief, Mr. Colombo had the authority to, and did, make decisions that concern Defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

57. Upon information and belief, due in part to his role as President and COO, Mr. Colombo was actively involved in the creation of the illegal policies complained of in this case.

58. Upon information and belief, due in part to his role as President and COO, Mr. Colombo actively advised Defendants' agents on the enforcement of the illegal policies complained of in this case.

59. Upon information and belief, due in part to his role as President and COO, Mr. Colombo actively ensured Defendants' compliance or non-compliance with laws of Missouri including, but not limited to, Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505.

11

60. Upon information and belief, Mr. Colombo had the authority to, and did, make decisions that concern the reviewing and counseling of Defendants regarding employment decisions, including hiring and firing of Plaintiffs and Class Members.

61. Upon information and belief, Mr. Colombo had the authority to, and did, make decisions that concern employees' schedules, hours and standard benefit levels.

62. Upon information and belief, Mr. Colombo had the authority to, and did, make decisions that concern standard pay scales.

63. Upon information and belief, Mr. Colombo had the authority to, and did, make decisions that concern Defendants' human resources policies, the resolution of issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

64. Upon information and belief, Mr. Colombo had the authority to, and did, make decisions that concern Defendants' employment and human resources records, including the systems for keeping and maintaining those records.

65. Upon information and belief, Mr. Colombo had the authority to, and did, make decisions that concern Defendants' payroll functions.

66. Upon information and belief, Mr. Colombo had the authority to, and did, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

67. Because Mr. Colombo had authority to hire or fire employees, provide and

12

direct support regarding human resources issues, including the hiring and firing of Plaintiffs and Class Members, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Colombo had the power to hire and fire employees.

68.     Because Mr. Colombo had authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Colombo supervised and controlled employees' work schedules and/or conditions of employment.

69.     Because Mr. Colombo had authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Colombo determined the rate and method of employees' payment.

70.     Because Mr. Colombo had authority with respect to Defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Colombo maintained employees' employment records.

71.     Because Mr. Colombo provided day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules

13

and/or conditions of employment, and administers employees' benefit programs, he was affirmatively, directly, and actively involved in operations of the Defendants' business functions, particularly in regards to the employment of Plaintiffs.

72.     Because Mr. Colombo was actively involved in the creation of the illegal policies complained of in this case, actively advised Defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensured Defendants' compliance or non-compliance with laws of Missouri including, but not limited to, Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505, he actively participated in the violations complained of in this action.

73.     Based upon the foregoing, Mr. Colombo is liable to Plaintiffs because of his active role in operating the business, his status as an employer, or according to state common law.

74.     Jay Crosson was the Senior Vice President of Human Resources of Dick's Sporting Goods, Inc.

75.     Upon information and belief, Mr. Crosson was responsible for, provided direction and control over, and was authorized to direct all aspects of human resources functions across Dick's Sporting Goods, Inc.

76.     Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, Mr. Crosson was actively involved in the creation of the illegal policies complained of in this case.

77.     Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, Mr. Crosson actively advised Defendants' agents on the enforcement of the illegal policies complained

14

of in this case.

78. Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, Mr. Crosson actively ensured Defendants' compliance or non-compliance with laws of Missouri including, but not limited to, Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505.

79. Upon information and belief, Mr. Crosson was actively involved in reviewing and counseling Defendants regarding employment decisions, including hiring and firing of Plaintiffs and Class Members.

80. Upon information and belief, Mr. Crosson was actively involved in decisions that set employees' schedules, hours and standard benefit levels.

81. Upon information and belief, Mr. Crosson was actively involved in decisions that set standard pay scales.

82. Upon information and belief, Mr. Crosson was actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

83. Upon information and belief, Mr. Crosson was actively involved in Defendants' employment and human resources records, including the systems for keeping and maintaining those records.

84. Upon information and belief, Mr. Crosson was actively involved in Defendants' payroll functions.

15

85.     Upon information and belief, Mr. Crosson was actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

86.     Upon information and belief, Mr. Crosson was actively involved in Defendants' benefit plans.

87.     Upon information and belief, Mr. Crosson was actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

88.     Because Mr. Crosson had authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Crosson had the power to hire and fire employees.

89.     Because Mr. Crosson had authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Crosson supervised and controlled employees' work schedules and/or conditions of employment.

90.     Because Mr. Crosson had authority to establish employees' rate and

16

method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Crosson determined the rate and method of employees' payment.

91.     Because Mr. Crosson had authority with respect to Defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Crosson maintained employees' employment records.

92.     Because Mr. Crosson provided day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he was affirmatively, directly, and actively involved in operations of Defendants' business functions, particularly in regards to the employment of Plaintiffs and Class Members.

93.     Because Mr. Crosson was actively involved in the creation of the illegal policies complained of in this case, actively advised Defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensured Defendants' compliance or non-compliance with laws of Missouri including, but not limited to, Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505, Mr. Crosson actively participated in the violations complained of in this action.

94.     Based upon the foregoing, Mr. Crosson is liable to Plaintiffs because of his active role in operating the business, his role in the violations complained of in this action, his status as an employer, or otherwise according to state law.

95.     Lynn Uram was the Senior Vice President of Human Resources of Dick's

17

Sporting Goods, Inc.

96.     Upon information and belief, Ms. Uram was responsible for, provided direction and control over, and was authorized to direct all aspects of human resources functions across Dick's Sporting Goods, Inc.

97.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, Ms. Uram was actively involved in the creation of the illegal policies complained of in this case.

98.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, Ms. Uram actively advised Defendants' agents on the enforcement of the illegal policies complained of in this case.

99.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, Ms. Uram actively ensured Defendants' compliance or non-compliance with laws of Missouri including, but not limited to, Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505.

100.    Upon information and belief, Ms. Uram was actively involved in reviewing and counseling Defendants regarding employment decisions, including hiring and firing of Plaintiffs and Class Members.

101.    Upon information and belief, Ms. Uram was actively involved in decisions that set employees' schedules, hours and standard benefit levels.

102.    Upon information and belief, Ms. Uram was actively involved in decisions that set standard pay scales.

18

103. Upon information and belief, Ms. Uram was actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

104. Upon information and belief, Ms. Uram was actively involved in Defendants' employment and human resources records, including the systems for keeping and maintaining those records.

105. Upon information and belief, Ms. Uram was actively involved in Defendants' payroll functions.

106. Upon information and belief, Ms. Uram was actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

107. Upon information and belief, Ms. Uram was actively involved in Defendants' benefit plans.

108. Upon information and belief, Ms. Uram was actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

109. Because Ms. Uram had authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the

hiring and firing of employees, Ms. Uram had the power to hire and fire employees.

110. Because Ms. Uram had authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Uram supervised and controlled employees' work schedules and/or conditions of employment.

111. Because Ms. Uram had authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Uram determined the rate and method of employees' payment.

112. Because Ms. Uram had authority with respect to Defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Uram maintained employees' employment records.

113. Because Ms. Uram provided day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she was affirmatively, directly, and actively involved in operations of Defendants' business functions, particularly in regards to the employment of Plaintiffs and Class Members.

20

114.    Because Ms. Uram was actively involved in the creation of the illegal policies complained of in this case, actively advised Defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensured Defendants' compliance or non-compliance with laws of Missouri including, but not limited to, Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505, Ms. Uram actively participated in the violations complained of in this action.

115.    Based upon the foregoing, Ms. Uram is liable to Plaintiffs because of her active role in operating the business, her role in the violations complained of in this action, her status as an employer, or otherwise according to state law.

## CLASS ACTION ALLEGATIONS

116.    The claims arising under this complaint are properly maintainable as a class action under Mo. Rev. Stat. § 507.070.

117.    The class size is believed to be at least 2,500 former and present employees, making joinder of all members impracticable.

118.    The Named Plaintiff, Jason Mensinger, (collectively "Plaintiffs") will adequately represent the interest of the Class Members because they are similarly situated to the Class Members and their claims are typical of, and concurrent to, the claims of the other Class Members.

119.    There are no known conflicts of interest between the Plaintiffs and the other Class Members.

120.    The class counsel, Sowers & Wolf, LLC and Thomas & Solomon LLP, are qualified and able to litigate the Class Members' claims.

21

121.     The class counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

122.     Common questions of law and fact predominate in this action because the claims of all Class Members are based on whether Defendants' practice of not paying nonexempt employees for all hours worked including applicable premium pay in violation of the laws of Missouri.

123.     The class action is maintainable under Mo. Rev. Stat. § 507.070 and Supreme Court Rule 52.08 because the class action is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein.   Absent this action, the Plaintiffs and Class Members likely will not obtain redress of their injuries and defendants will retain the proceeds of their violations of the laws of Missouri.


## STATEMENT OF FACTS

124.     Dick's Sporting Goods, Inc. is self proclaimed as "one of the fastest growing, most profitable sporting goods retailers in the country."  Indeed, Defendants opened approximately 43 new locations in 2008.

125.     One of Defendants' largest expenses is the payroll of its hourly paid employees.  In order to reduce this expense and to maximize profitability, Defendants have maintained a company-wide policy of not paying hourly employees for all time worked, and encouraging off-the-clock work to be performed.

22

126. Defendants put pressure on management of all levels, including at the district and store level, to encourage and allow hourly employees to perform off-the-clock work. This is achieved by the promises of reward and punishment. Defendants set payroll budgets that can only realistically be met if hourly employees are performing work off the clock. Management is awarded bonuses that are largely dependent on staying within the payroll budget. If not met, the job security of district and store managers is threatened.

127. The pressures of reducing payroll expenses and staying within the payroll budgets encouraged management to grossly understaff each location.

128. The above stated policies and procedures cause Defendants to allow, direct and encourage hourly employees to perform work, as described below, without proper compensation.

129. Defendants have actual knowledge that work is being performed without compensation.

### *Meal Break Deductions*

130. The Defendants' maintain a company-wide payroll policy of deducting either one half-hour or one hour from Class Members' compensable time for scheduled "non-working" break periods without ensuring that employees are completely relieved of work related duties during that time.

131. Individuals often work through their scheduled breaks or are interrupted during their breaks so that they do not take the full time allowed for the break and deducted in accordance with the policy.

132. Plaintiffs were subject to the policy.

23

133.  Plaintiffs worked through their breaks.

134.  Plaintiffs were interrupted and required to perform work during their breaks.

135.  Due to chronic understaffing and payroll restraints, Class Members are often unable to be relieved by another employee to cover their department, and are therefore unable to leave their department to take their scheduled meal break. If an employee leaves their department uncovered, Defendants reprimand them.

136.  In many instances, it is Defendants' management staff who requires work to be performed by employees during their scheduled meal break period.

137.  Nevertheless, by operation of the policy, Plaintiffs' compensable time was impermissibly reduced under the policy.

138.  All class members are subject to the policy and are not fully compensated for work they perform during breaks.

139.  In many instances, if Plaintiffs' hours had been properly calculated, the time spent working through the breaks would have resulted in the Plaintiffs' qualifying for overtime compensation.

140.  These policies and practices are willful violations of Missouri statutory laws and common law.

***Other Off-the-Clock Work***

141.  Plaintiffs were also required to perform work off the clock, including but not limited to, before and after their scheduled shifts.

142.  This off-the-clock work includes time worked after the store location was closed for business, and the employees were "locked-in" and being forced to work

24

uncompensated until management allowed them to leave.

143.    Pursuant to Defendants' policies, Plaintiffs and Class Members were required to help customers, even if they were off the clock, including prior to the start of their shift.

144.    All Class Members were subject to performing additional work without compensation.

145.    Defendants suffered or permitted such work to be performed during breaks and at other times while off the clock, and were aware the time worked was not being properly compensated.

146.    In many instances, if Plaintiffs' hours had been properly calculated, the time spent working through the breaks would have resulted in the Plaintiffs' qualifying for overtime compensation.

147.    These policies and practices are willful violations of Missouri statutory laws and common law.

### *Failure to Properly Pay Overtime*

148.    Throughout their tenure with Defendants, Plaintiffs and Class Members frequently worked in excess of forty hours in a week.

149.    Plaintiffs and Class Members were not compensated at the statutory overtime rate for hours they worked in excess of forty.

150.    For example, Plaintiffs and Class Members were suffered or permitted to work more than 40 hours in one week and then permitted or directed to take time off in another week or receive "retro pay" in the following week at straight time rates, thus depriving employees of overtime compensation in the week it was earned.

25

151. Defendants suffered and permitted Plaintiffs and Class Members to work those hours and Defendants were aware that such employees did in fact work over forty hours in a week.

152. Defendants, however, refused to pay Plaintiffs and Class Members overtime for those hours in excess of forty.

153. It is Defendants' policy and practice to not compensate Plaintiffs and Class Members at a rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty.

154. Defendants' policy and practice is not to ensure that it pays overtime according to the law.

155. The Defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements.

156. These policies and practices are willful violations of Missouri statutory laws and common law.

### *Additional Allegations*

157. Among the relief sought, Plaintiffs seek injunctive relief to prevent the Defendants from continuing the illegal policy and practice perpetuated pursuant to the policy.

158. Defendants offered Plaintiffs and Class Members fixed hourly wages for all time worked in exchange for labor and services performed by Plaintiffs and Class Members.

159. By entering into an employment relationship with Plaintiffs and Class Members, Defendants entered into a contract for employment, including implied

26

contracts and express contracts.

160. Defendants expressly told each Class Member the hourly rate to be paid for all time in which work was performed.

161. Defendants promised Class Members, as outlined in the Employee Handbook, that Class Members would receive both paid and unpaid breaks based on the number of hours worked and individual state statutory laws.

162. In addition, Defendants' express oral contract with Plaintiffs and Class Members embodied all binding legal requirements concerning the payment of such wages to the Plaintiffs and Class Members that were in force at the time of that contract.

163. Class Members accepted Defendants offer of employment, and reasonably relied on Defendants' promise to pay the agreed upon wage for all time worked.

164. Defendants failed to ensure that Plaintiffs and Class Members received all agreed upon rest and meal breaks. Further, Defendants failed to ensure that Plaintiffs and Class Members were properly compensated when work was performed during the agreed upon rest and meal breaks.

165. As alleged herein, Plaintiffs and Class Members regularly worked hours both under and in excess of forty per week and were not paid for all of those hours.

166. By failing to pay Plaintiffs and Class Members for all time worked, Defendants breached both the express and implied contracts entered into with Plaintiffs and Class Members.

167. Defendants failed to act in good faith and breached the express and/or implied contract terms by failing to pay Class Members for all of the time Class Members worked and by failing to pay Class Members all time worked including applicable

27

premium pay. As a result of Defendants' breach of express and implied contracts, Plaintiffs and Class Members have been harmed and as a direct and proximate result have suffered damages including all amounts they should have been paid for all time worked including applicable premium pay.

168. Both the express and implied promises made to Plaintiffs and Class Members contained an implied covenant of good faith and fair dealing, which obligated Defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would violate any state law governing the employment relationship or any act that would deprive Class Members of the benefits of the contract

169. Defendants breached their duty of good faith and fair dealing by failing to compensate Plaintiffs and Class Members in accordance with the applicable state laws for all the time worked, including applicable premium pay.

170. As a result of Defendants' breach of duty of good faith and fair dealing, Plaintiffs and Class Members have been harmed and as a direct and proximate result have suffered damages including all amounts they should have been paid for all the time worked, including applicable premium pay.

171. At all relevant times, Defendants had and continued to have a legal obligation to pay Plaintiffs and Class Members all earnings and overtime due. The wages belong to Plaintiffs and Class Members as of the time the labor and services were provided to Defendants and, accordingly, the wages for services performed are the property of the Plaintiffs and Class Members.

172. In refusing to pay wages and applicable premium pay to Plaintiffs and

28

Class Members, Defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Plaintiffs and Class Members for Defendants' own use, purpose and benefit. At the time the conversion took place, Plaintiffs and Class Members were entitled to immediate possession of the amount of wages and overtime earned. As a result, Plaintiffs and Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial. This conversion was done in bad faith, oppressive, malicious, and fraudulent and/or done with conscious disregard of the rights of the Plaintiffs and Class Members. This conversion was concealed from Plaintiffs and Class Members.

173.     Defendants' failure to compensate Plaintiffs and Class Members for all the time they worked, including applicable premium pay, constitutes the conversion of the monies of Plaintiffs and the Class Members.

174.     As a direct and proximate result of the conversion by Defendants of monies belonging to Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages including all amounts they should have been paid at regular or premium rates for time worked.

175.     Plaintiffs and Class Members conferred a benefit upon Defendants by working on Defendants' behalf without receiving compensation, including premium overtime compensation.

176.     As detailed herein, rather than incur additional labor costs by paying non-exempt hourly-paid employees for all of the hours that they worked, Defendants required Plaintiffs and Class Members to work hours under and in excess of forty without receiving any compensation for those hours.

177.    Defendants had an appreciation or knowledge of the benefit conferred by these Plaintiffs and Class Members. For example, Defendants' management has: observed Plaintiffs and Class Members working through their unpaid meal breaks, directed Plaintiffs and Class Members to work during their unpaid meal breaks, and affirmatively told Plaintiffs and Class Members that they could not be paid for such time.

178.    Defendants have received financial gain at the expense of Plaintiffs and Class Members because they did not pay Plaintiffs and Class Members for all hours worked and Defendants kept the monies owed to the Plaintiffs and Class Members.

179.    Defendants have received that financial gain under such circumstances that, in equity and good conscience, Defendants ought not to be allowed to profit at the expense of Plaintiffs and Class Members.

180.    Defendants enjoyed the benefit of the monies rightfully belonging to the Plaintiffs and Class Members at the expense of the Plaintiffs and Class Members.

181.    Defendants failed to act in good faith by failing to pay for all the time worked including applicable premium pay, which has unjustly enriched Defendants to the detriment of Plaintiffs and Class Members.

182.    Defendants failed to act in good faith and violated their obligations by failing to pay Plaintiffs and Class Members for the reasonable value of the services performed by Plaintiffs and Class Members for defendants.

183.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and Class Members have suffered injuries and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiffs' and the Class Members' work without compensation as required by Missouri statutory and

30

common laws.

184. Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements contained in Missouri statutory laws as well as state common law.

185. The Defendants engaged in such conduct and made such statements to conceal from the Plaintiffs their rights and to frustrate the vindication of the employees' rights under state law.

186. Through the paystubs and payroll information it provided to employees, Defendants deliberately concealed from its employees that they did not receive compensation for all the work they performed and misled them into believing they were being paid properly.

187. As a result, employees were unaware of their claims.

188. Plaintiffs and Class Members are under no duty to inquire of Defendants that they were paid for all hours worked including applicable premium pay. As a direct and proximate cause of Defendants affirmatively misleading Plaintiffs and Class Members regarding the fact that they were to be paid for all hours worked, Defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.

189. Further, by maintaining and propagating the illegal policies, Defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for time worked, even though Plaintiffs were not receiving pay for all time worked.

190. Defendants misrepresented in their employee manuals and policy manuals

31

to Plaintiffs and Class Members that they would be paid for all hours worked including those worked both under and in excess of forty in a work week.

191. Defendants intended for Plaintiffs and Class Members to rely upon Defendants' misrepresentations that they would be paid for all the time worked, including applicable premium pay.

192. Defendants, however, at all times intended to violate applicable state laws by failing to pay Plaintiffs and Class Members for all the time worked, including applicable premium pay.

193. These misrepresentations were material to the terms of Plaintiffs' and Class Members' employment contracts (express and implied), and Plaintiffs and Class Members relied on the misrepresentations in agreeing to accept and continue employment with Defendants. This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that Defendants would abide by their obligations pursuant to applicable state law.

194. When Defendants hired Plaintiffs and Class Members, they represented to Plaintiffs and Class Members that they would be fully compensated for all services performed.

195. Defendants affirmatively mislead Plaintiffs and Class Members regarding the fact that Defendants failed to pay Plaintiffs and Class Members for all hours worked.

196. Defendants induced Plaintiffs and Class Members to accept employment with Defendants by misrepresenting to Plaintiffs and Class Members that they would be fully compensated for all hours worked.

197. There was no reasonable basis for Defendants to believe these

representations because Defendants had a continuing practice and policy of failing to pay their employees for all the time worked, including applicable premium pay. Plaintiffs and Class Members relied upon Defendants' representations by performing work and services for Defendants. This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that Defendants would abide by their obligations to pay for all hours worked pursuant to the Mo. Rev. Stat. § 290.010, *et seq.*; and Mo. Rev. Stat. § 290.505 and common law.

198.    As a direct and proximate cause of Defendants' fraud and negligent misrepresentations Plaintiffs and Class Members have suffered damages because they were not compensated for all hours that they worked both under and in excess of forty per week.

199.    Defendants also failed to make, keep and preserve true and accurate records of the hours worked by Plaintiffs and Class Members in violation of Mo. Rev. Stat. § 290.520.

200.    Defendants failed to post a summary of wage and hour laws in a conspicuous place where employees could read it in violation of Mo. Rev. Stat. § 290.522.

201.    Plaintiffs and Class Members are uncertain as to the amount of the monetary benefit that was conferred upon Defendants by working on Defendants' behalf without receiving compensation, including applicable premium pay.

202.    More specifically, the records kept by Defendants failed to adequately and accurately disclose, among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

33

203.     Plaintiffs and Class Members are entitled to an accounting of the monetary benefit that was conferred upon Defendants by working on Defendants' behalf without receiving compensation, including applicable premium overtime compensation.

204.     Defendants failed to pay all wages due to Plaintiffs and Class Members on regular days designated in advance pursuant to the Mo. Rev. Stat. § 290.010, *et seq.*

205.     Plaintiffs and Class Members are not seeking any recovery under the Fair Labor Standards Act in this action.

206.     These policies and practices are willful violations of Missouri statutory laws and common law.

## COUNT I

### Violation of Mo. Rev. Stat. § 290.010, *et seq.*

207.     Plaintiffs re-allege the above statements as if fully restated herein.

208.     As a direct and proximate cause of Defendants' acts, including Defendants' failure to act in good faith, Defendants violated Mo. Rev. Stat. § 290.010, *et seq.*, and Plaintiffs and Class Members have suffered damages.

## COUNT II

### Failure to Pay Overtime Wages, Mo. Rev. Stat. § 290.505

209.     Plaintiffs re-allege the above statements as if fully restated herein.

210.     As a direct and proximate cause of Defendants' acts, including Defendants' failure to act in good faith, Defendants violated Mo. Rev. Stat. § 290.505, and Plaintiffs and Class Members have suffered damages.

## COUNT III

### Breach of Contract: Failure to Pay Earned Wages

34

211.    Plaintiffs re-allege the above statements as if fully restated herein.

212.    Defendants are liable to Plaintiffs and Class Members for breach of their contract.

213.    As a direct and proximate cause of Defendants' breach of contract, Plaintiffs and Class members have suffered damages.

## COUNT IV

### Breach of Contract: Failure to Provide and Pay for Missed and/or Interrupted Meal Breaks

214.    Plaintiffs re-allege the above statements as if fully restated herein.

215.    Defendants are liable to Plaintiffs and Class Members for breach of their contract.

216.    As a direct and proximate cause of Defendants' breach of contract, Plaintiffs and Class members have suffered damages.

## COUNT V

### Breach of Implied Contract

217.    Plaintiffs re-allege the above statements as if fully restated herein.

218.    Defendants are liable to Plaintiffs and Class Members for breach of implied contract.

219.    As a direct and proximate cause of Defendants' breach of implied contracts, Plaintiffs and Class Members have suffered damages.

## COUNT VI

### Quantum Meruit/Unjust Enrichment

220.    Plaintiffs re-allege the above statements as if fully restated herein.

221.    Defendants are liable to Plaintiffs and Class Members based on quantum meruit.

222.    As a direct and proximate cause of Defendants' failure to pay Class Members for the reasonable value of services, including Defendants' failure to act in good faith, Plaintiffs and Class Members have suffered damages.

## COUNT VII

### Breach of Implied Covenant of Good Faith and Fair Dealing

223.    Plaintiffs re-allege the above statements as if fully restated herein.

224.    Defendants willfully violated their obligations under the common laws and state laws of Missouri and are liable to Plaintiffs and Class Members for breach of their duty of good faith and fair dealing.

225.    As a direct and proximate cause of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered damages.

## COUNT VIII

### Unjust Enrichment/Restitution

226.    Plaintiffs re-allege the above statements as if fully restated herein.

227.    Defendants willfully violated their obligations under Missouri state and common laws, and have been unjustly enriched through their failure to pay for all time Plaintiffs and Class Members performed work.

228.    As a direct and proximate cause of Defendants' actions, Plaintiffs and Class Members have suffered damages.

## COUNT IX

**Promissory Estoppel**

229.    Plaintiffs re-allege the above statements as if fully restated herein.

230.    Defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.

## COUNT X

### Conversion

231.    Plaintiffs re-allege the above statements as if fully restated herein.

232.    Defendants are liable to Plaintiffs and Class Members for conversion.

233.    As a direct and proximate result of the conversion by defendants of monies belonging to Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages.

## COUNT XI

### Fraud

234.    Plaintiffs re-allege the above statements as if fully restated herein.

235.    Defendants are liable to Plaintiffs and Class Members for fraud.

236.    As a direct and proximate cause of Defendants' misrepresentations, Plaintiffs and Class Members have suffered damages.

## COUNT XII

### Negligent Misrepresentation

237.    Plaintiffs re-allege the above statements as if fully restated herein.

238.    Defendants are liable to Plaintiffs and Class Members for negligent misrepresentations.

37

239.    As a direct and proximate cause of Defendants' misrepresentations,

Plaintiffs and Class Members have suffered damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, in an amount in excess

of $25,000.00, plus an award of liquidated damages, plus costs of suit in their favor and

that they be given the following relief:

     (a)    certification of this case as a class action;

     (b)    an order preliminarily and permanently restraining Defendants from
             engaging in the aforementioned pay violations;

     (c)    an award of the value of Plaintiffs' and Class Members' unpaid wages,
             including fringe benefits;

     (d)    an award of reasonable attorneys' fees, expenses, expert fees and costs
             incurred in vindicating Plaintiffs' rights;

     (e)    an award of pre- and post- judgment interest; and

     (f)    such other and further legal or equitable relief as this Court deems to be
             just and appropriate.

## JURY DEMAND

Plaintiffs hereby request a jury trial on all issues so triable.

                     Respectfully submitted,
                     Jason Mensinger
                     and all others similarly situated,

                     By their attorneys,

                     SOWERS & WOLF, LLC
                     Ferne P. Wolf, 29326
                     fw@sowerswolf.com
                     D Eric Sowers, 24970
                     es@sowerswolf.com
                     M Beth Fetterman, 59550

bf@sowerswolf.com
530 Maryville Centre Drive, Suite 460
St. Louis, MO 63141
314 744-4010/314 744-4026 (fax)

THOMAS & SOLOMON LLP
Patrick J. Solomon (*pro hac vice admission anticipated*)
Peter J. Glennon (*pro hac vice admission anticipated*)
693 East Ave
Rochester, NY 14607
(585)272-0540
psolomon@theemploymentattorneys.com
pglennon@theemploymentattorneys.com